**BORGER MANAGEMENT,
INC., Appellant,**

v.

**Carolyn NELSON–LEE, Appellee.**

**No. 07–CV–406.**

District of Columbia Court of Appeals.

Argued Sept. 17, 2008.
Decided Oct. 30, 2008.

days to cure any subsequent violations. However, when there is a similar repeat violation after the initial thirty-day period, we further conclude that the Rental Housing Act allows for a fact sensitive inquiry into whether a tenant has *effectively* cured. Such an interpretation allows landlords to issue only a notice to quit, even after the cure period has elapsed, when a tenant temporarily stops the violation in the thirty-day period but repeats the same violation soon afterwards.

## I.

Appellant Borger Management, Inc., leases an apartment to appellee Carolyn Nelson–Lee in a building the company manages on Hawaii Avenue in the District of Columbia. Nelson–Lee's apartment is near an apartment leased to William Dawes. In May 2006, Dawes withheld his payment of rent and claimed that the warranty of quiet enjoyment had been breached by excessive noise coming from the apartments leased to Nelson–Lee and a third tenant. In a settlement agreement with Dawes, Borger agreed to take action against his neighbors over the excessive noise.

On June 2, 2006, Borger issued a Notice to Cure or Quit to Nelson–Lee. The notice explained that music was being played from the apartment at "such a high volume that it can be heard from outside your apartment and is disturbing to your neighbors [who] are being routinely disturbed by the high volume of your music on almost a daily basis." The notice stated that Nelson–Lee must either cure the problem within thirty days or vacate the apartment by July 10, 2006. Of particular importance is this sentence:

> You have thirty days within which to cure the foregoing violation, in which case this notice shall be deemed withdrawn, provided, however, that *a renew-*

Phillip L. Felts, Bethesda, MD, with whom Emilie Fairbanks was on the brief, for appellant.

Beth Mellen Harrison, with whom Barbara McDowell filed a brief on behalf of appellee as amicus curiae, for the Legal Aid Society of the District of Columbia.

Before FARRELL, Associate Judge, Retired, and NEBEKER and SCHWELB, Senior Judges.

PER CURIAM:

The sole issue in this appeal is whether the Rental Housing Act of 1985 requires a landlord, before suing for possession, to provide tenants with an opportunity to cure violations of tenancy obligations when six months earlier the landlord gave notice of similar violations, which the tenant cured. Appellant Borger Management invites us to read the statutory language broadly and require only one notice to cure before a landlord may issue a notice to quit for a subsequent violation, even if the tenant has cured within the thirty-day cure period. We conclude that once prior violations have been sufficiently cured, landlords are required to give tenants thirty

al of such violation shall be cause for the landlord to seek possession of your premises without further opportunity on your part to cure such a violation.

(Emphasis added.) Borger acknowledges that the excessive noise from Nelson–Lee's apartment stopped and that it received no complaints from Dawes in June or July 2006. Before the trial court, Borger explained that because the excessive noise ceased within the thirty-day period to cure, "Ms. Nelson in this case did not have to be out on July 10th."

A short time later, however, the noise and complaints resumed. Dawes reported excessive noise from Nelson–Lee's apartment multiple times in August, September, October, and November 2006. On November 28, 2006, Borger issued a notice to quit against Nelson–Lee and instructed her to vacate her apartment by January 1, 2007. This second notice did not provide a new period to cure the violations. Instead, the notice stated that the subsequent noise violations demonstrated that the original violations had not been adequately cured during the thirty-day period provided in the original June 2, 2006 notice.

After Nelson–Lee refused to vacate her apartment, Borger filed a complaint for possession. At a hearing, the trial court dismissed the complaint, concluding that the November 28, 2006 notice to quit was defective because it did not provide Nelson–Lee with an opportunity to cure. The ruling was premised on Borger's concession that Nelson–Lee had in fact corrected the violation during the thirty-day cure period. On appeal, Borger contends that the trial court erred in concluding that the Act required the company to provide the tenant with an opportunity to cure, when it had previously done so six months earlier. Amicus curiae Legal Aid Society of the District of Columbia argues that the law

requires landlords to provide such an opportunity.

## II.

██  Pursuant to the Rental Housing Act of 1985, a landlord may evict a rent-paying tenant "where the tenant is violating an obligation of tenancy and fails to correct the violation within 30 days after receiving from the housing provider a notice to correct the violation or vacate." D.C.Code § 42–3505.01(b) (2007 Supp.) (emphasis added). The implementing regulations mirror this language. See 14 DCMR §§ 4301.1, 4301.3 (2004). The plain language of this statute is that landlords are required to provide a single notice to cure or vacate, and that a notice to quit is insufficient if it does not permit the tenant to cure the violation.

██  Our prior case law demonstrates that a notice to quit must also contain a notice to cure in order to be valid. In *Cormier v. McRae*, 609 A.2d 676 (D.C. 1992), we explained that a landlord was formerly required to issue both a notice to cure and a separate notice to quit, but that changes to the Rental Housing Act now require landlords to issue one combined notice:

Two statutes applied: D.C.Code § 45–1699.6(b)(1) (1980 Supp.)—part of the 1977 Rental Housing Act—required a "notice to cure"; D.C.Code § 45–906 (1973), called for a "notice to quit." This court indicated that these two notices were different documents, not only because their purposes were obviously different but also because service of process on a tenant under § 45–906, including substituted service, was different than that allowed under the 1977 Rental Housing Act.

*Id.* at 679–80 (citing *Jones v. Brawner Co.*, 435 A.2d 54, 56 (D.C.1981) (footnotes omitted)). However, the 1980 Rental Housing

Act, which supplanted the 1977 Act, "effectively merged the notice to cure and the notice to quit into one required notice." *Id.* at 680 n. 6 (citing *Cooley v. Suitland Pkwy. Overlook Tenants' Ass'n*, 460 A.2d 574, 576 (D.C.1983)). We explained that a separate notice to quit is now no longer valid. *Id.* at 680.[1] "The 1985 Rental Housing Act presently in effect has retained the [same] ... language" concerning the required notice that a landlord must provide before seeking possession. *Id.* at 680 n. 6.

Borger argues that it should not be required to provide Nelson–Lee with a second opportunity to cure the same violations of tenancy obligations for which she received the Notice to Cure or Quit six months earlier. Borger claims that interpreting the statute to require a second notice to cure when the tenant repeats the same violation after the initial cure period elapses would allow a tenant to correct a violation on the thirtieth day of the cure period and prevent eviction, but then resume violating the tenancy obligations on the very next day in an attempt to manipulate the system. However, neither the statute nor the regulations provide for such a waiver of the tenant's opportunity to correct a violation once the tenant has sufficiently cured. *See* D.C.Code § 42–3505.01(b) (2007 Supp.); 14 DCMR §§ 4301.1, 4301.3. "Moreover, the eviction restrictions of [§ 42–3505.01] are ... part of a comprehensive legislative scheme to protect the rights of tenants and therefore must be construed liberally." *Administrator of Veterans Affairs v. Valentine*, 490 A.2d 1165, 1168 (D.C.1985) (per curiam). To interpret the statute otherwise could subject a tenant to eviction without an opportunity to cure a new violation if the tenant earlier cured a different violation.

As Borger urges, a liberal construction of the legislative scheme should also consider the right to quiet enjoyment of other tenants. However, Borger failed to contend in the trial court that Nelson–Lee never effectively cured and continued to disturb her neighbors. Had it done so, that court would have confronted the factual issue of whether, under the particular circumstances, the intra-thirty-day cure was simply manipulative of the system and no real cure at all. When thus presented, that court would consider whether the initial notice to cure was specific as to the type of violation, whether the second violation was the same as or sufficiently similar to the first violation in the initial notice to cure, and whether the recurrence was near in time to the first notice to cure. Because Borger failed to claim that Nelson–Lee did not effectively cure to the trial court, we decline to address this claim on appeal. *District of Columbia v. Califano*, 647 A.2d 761, 765 (D.C.1994) ("It is a well established principle of appellate review that [claims] not made at trial may not be raised for the first time on appeal."); *see generally Yee v. City of Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992).

Here, Borger told the trial court that Nelson–Lee could not have been evicted under the June 2, 2006 Notice to Cure or Quit because she cured the excessive noise within the thirty-day period. Borger stated that the excessive noise stopped for two months. Once Borger conceded that Nelson–Lee cured the violation within the

---

1. "By eliminating the need for—indeed, the validity of—a separate notice to quit when a landlord gives notice to cure or vacate, the 1980 Act and its successor, the 1985 Rental Housing Act governing this case, have altogether eliminated the applicability—to the landlord—of any statutory provision, such as § 45–1402, that provides rules governing only 'notices to quit' as such." *Id.* (footnote omitted).

thirty-day period, it was required to issue a new notice to cure or quit for any subsequent violation and provide Nelson–Lee with thirty days to cure before it could seek possession. *See Grimes v. Newsome,* 780 A.2d 1119, 1120–21 (D.C.2001) (noting that a landlord gave a tenant a second opportunity to cure the same violation ten months after issuing the first Notice to Cure or Quit). Therefore, the trial judge did not err in concluding that Borger's November 28, 2006 Notice to Quit was defective because it did not provide an opportunity for Nelson–Lee to cure the violation. Accordingly, we

*Affirm.*